1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    COLTON JAMES ROOD,                          No.  2:19-cv-1806 KJM AC P

12                    Plaintiff,

13          v.                                     FINDINGS & RECOMMENDATIONS

14    LOCKWOOD, et al.,

15                    Defendants.

16

17          Plaintiff is a former prisoner proceeding pro se with a civil rights action pursuant to

18    42 U.S.C. § 1983.  Currently before the court are the parties' cross-motions for summary

19    judgment.  ECF Nos. 80, 84.

20    I.      Procedural History

21          This case proceeds on plaintiff's original complaint (ECF No. 1), which was screened and

22    found to state claims for relief against defendants Lockwood, Clark, and Van Gerwen (ECF No.

23    13).  Plaintiff's claims against defendant Shasta County Jail Hiring Authority were voluntarily

24    dismissed without prejudice.  ECF No. 20.  Following the close of discovery, the parties filed

25    cross-motions for summary judgment.  ECF Nos. 80, 84.  Both motions are now fully briefed.

26    II.     Plaintiff's Allegations

27          The complaint sets out three claims for relief against defendants Lockwood, Clark, and

28    Van Gerwen.  ECF No. 1.

                                                   1

Claim One alleges that defendants Lockwood and Clark used excessive force against plaintiff during a search and escort on August 28, 2019.  Id. at 3.  While plaintiff was being searched, defendants told him that they had filed reports saying he had been doing pushups, which resulted in his arm sling being taken away, and after plaintiff was searched, they told him to put his hands behind his back, despite knowing he was unable to do so because of a medical condition.  Id.  When plaintiff reminded them that he was unable to put his arm behind his back, Clark pushed him into a wall and twisted his arm back, dislocating his shoulder, while Lockwood threatened to assault him.  Id.  Defendants then escorted plaintiff to the sally port, all the while wrenching and twisting his arms and causing additional pain.  Id.  They then pushed him into a corner, causing his head to hit the concrete wall, after which Lockwood shoved plaintiff's head into the wall a second time, causing a concussion.  Id. at 4.  When defendants eventually returned plaintiff to his cell they assaulted him again.  Id.  Plaintiff filed a grievance, after which defendants came to his cell to ask if he wanted to go with them to medical.  Id.  When plaintiff told defendants he believed they would assault him again if he went with them, they told him they would write him up for something.  Id.  Plaintiff was later escorted to medical by two other officers, at which time his shoulder was relocated.  Id.

In Claim Two, plaintiff alleges that on August 16, 2019, Lockwood deliberately delayed his access to medical care after he began suffering heart palpitations.  Id. at 5.  Then, during the escort to medical, Lockwood used his weight to cause plaintiff to collapse and hit his head on the ground.  Id.  Upon plaintiff's return to his cell, Lockwood refused to give him the tablet to file a grievance, telling plaintiff that it was because he knew plaintiff wanted to file a grievance about Lockwood's conduct.  Id.

Finally, plaintiff alleges in Claim Three that defendants Lockwood and Van Gerwen interfered with his medical care by denying him an arm sling.  Plaintiff's arm sling was initially taken away on August 2, 2019, based on fabricated reports submitted by Lockwood.  Id. at 6.  On August 29, 2019, plaintiff was re-issued his arm sling, but several days later Lockwood saw him using his sling and, with the assistance of Van Gerwen, forcibly removed the sling.  Id.  Two days later, while plaintiff was on his way to medical to try and get his sling back, Van Gerwen began

2

yelling at him to put his hand behind his back, despite knowing that he could not.  Id.  Plaintiff

told him that he could not and that that was why he was going to medical.  Id.  Van Gerwen

responded by telling plaintiff to put his hand behind his back or go back to his cell, and when

plaintiff told him he was afraid of being assaulted and that his only option was to go back to his

cell, Van Gerwen became angry and pushed him into his neighbor's door before putting plaintiff

back into his cell, preventing him from getting medical assistance.  Id.

III.     Motions for Summary Judgment

A.     Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

moving party may accomplish this by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory

answers, or other materials" or by showing that such materials "do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact."  Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need

only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

Indeed, summary judgment should be entered, "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such

a circumstance, summary judgment should "be granted so long as whatever is before the district

court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

56(c), is satisfied." Id.

> "When the party moving for summary judgment would bear the
> burden of proof at trial, it must come forward with evidence which
> would entitle it to a directed verdict if the evidence went
> uncontroverted at trial.  In such a case, the moving party has the
> initial burden of establishing the absence of a genuine issue of fact
> on each issue material to its case."

Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) (quoting C.A.R. Transp.

Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

existence of this factual dispute, the opposing party may not rely upon the allegations or denials

of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  However, a complaint that is submitted in

substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and

may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal

knowledge and contain specific facts admissible into evidence.  See Jones v. Blanas, 393 F.3d

918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the

verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal

knowledge by citing two specific instances where correctional staff members . . . made statements

from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d

196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008)

(reversing the district court's grant of summary judgment because it "fail[ed] to account for the

fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746.  His

verified complaint therefore carries the same weight as would an affidavit for the purposes of

summary judgment.").

////

The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Because plaintiff was still incarcerated at the time defendants filed their motion for summary judgment, defendants served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure with their motion for summary judgment. ECF No. 81; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

1    B.    Defendants' Motion for Summary Judgment

2        1.   Defendants' Arguments

3        In their motion for summary judgment, defendants argue that plaintiff did not exhaust

4    some of his claims.  ECF No. 80 at 16-18.  They also assert that they did not use excessive force

5    and were not deliberately indifferent to plaintiff's serious medical needs.  Id. at 18-25.

6    Alternatively, they argue that they are entitled to qualified immunity.  Id. at 25-27.

7        2.   Plaintiff's Response

8        At the outset, the court notes that while plaintiff has separately responded to each of

9    defendants' statements of fact, he has failed to comply with Federal Rule of Civil Procedure

10   56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely disputed must

11   support the assertion by . . . citing to particular parts of materials in the record."

12       "Pro se litigants must follow the same rules of procedure that govern other litigants."

13   King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

14   Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

15   established that district courts are to "construe liberally motion papers and pleadings filed by *pro*

16   *se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611

17   F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel

18   "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes

19   upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

20   Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

21   internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of

22   "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation

23   omitted).

24       Accordingly, the court considers the record before it in its entirety despite plaintiff's

25   failure to be in strict compliance with the applicable rules.  However, the court will only consider

26   those assertions in the opposition which have evidentiary support in the record.

27       Plaintiff opposes defendants' motion on the grounds that the video surveillance footage is

28   inadequate because defendants abused plaintiff out of camera view (ECF No. 91 at 1-2), that

administrative remedies were inadequate or unavailable to him (id. at 2), that defendants did not provide proper evidence in their discovery (id. at 2-3), and that defendants are not entitled to qualified immunity (id. at 3).[1]

Defendants filed a reply arguing that plaintiff's opposition is untimely, and that plaintiff's statement of events is false and based on self-serving testimony.  ECF No. 95 at 3-5

### C.    Plaintiff's Motion for Summary Judgment

Plaintiff has also filed a motion that purports to be a motion for summary judgment.  ECF No. 84.  However, plaintiff is moving for summary judgment on the ground that defendant did not produce court ordered discovery.  Id.  Defendants contend that plaintiff's motion is actually a motion for sanctions, which is improper and untimely.  ECF No. 85 at 4-6.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Plaintiff has not addressed any material facts in his motion, and defendants have correctly identified it as an improperly captioned motion for sanctions.  To the extent plaintiff is moving for sanctions related to his motion to compel (ECF No. 57), the court ordered deadline for seeking sanctions was May 15, 2023 (ECF No. 70), which had long since passed by the time plaintiff filed his motion.  Further, summary judgment is not an appropriate sanction for failing to produce discovery documents.  See Fed. R. Civ. P. 56.

Therefore, plaintiff's motion for summary judgment, which is construed as a motion for dispositive sanctions, should be denied.

### IV.    Material Facts

#### A.    The Parties

At all relevant times, plaintiff was a pretrial detainee at the Shasta County Jail in Redding, California.  ECF No. 80-1 at 2, ¶ 1; ECF No. 91 at 4.

////

////

---

[1]  Multiple times in plaintiff's opposition, he references the court's decisions in other orders.  To the extent plaintiff is referencing orders from other cases, those will not be considered here.

1        B.      August 16, 2019 Incident

2        On August 16, 2019, plaintiff complained of heart palpitations and chest pains, and was

3    taken to medical.  ECF No. 1 at 5; ECF No. 80-1 at 2-3, ¶¶ 3, 7.  Plaintiff and defendants' version

4    of events differ significantly.

5        According to plaintiff, after he experienced heart palpitations and chest pain, he filed a

6    medical "slip."  ECF No. 1 at 5.  Plaintiff avers that he told Lockwood, who ignored him at first

7    and then told plaintiff he was wasting Lockwood's time.  Id.  Plaintiff was visibly distressed, felt

8    dizzy and stumbled several times, and could not walk straight on the way to medical.  Id.; ECF

9    No. 91 at 4-5.  As Lockwood and plaintiff were walking to medical, Lockwood grabbed

10   plaintiff's shirt and shoulder and put weight on plaintiff, which caused him to collapse on the

11   ground, and Lockwood landed on top of plaintiff.  ECF No. 1 at 5; ECF No. 91 at 5.  Plaintiff's

12   head hit the ground and he received a head injury.  ECF No. 1 at 5.  When plaintiff arrived at

13   medical, his heart rate and blood pressure were high and the physician assistant gave him

14   something to "chew on" that relieved his symptoms.  Id.; ECF No. 91 at 5.  Upon returning to his

15   cell, plaintiff requested a tablet from Lockwood, who refused, saying that he knew plaintiff

16   wanted to file a grievance.  ECF No. 1 at 5.

17       Defendants claim that plaintiff was not displaying any signs of distress and was not

18   having trouble standing.  ECF No. 80-1 at 2, ¶ 3.  Because plaintiff had a history of trying to

19   manipulate deputies, Lockwood told plaintiff that he would be written up for manipulation if he

20   was lying.[2]  Id., ¶ 4.  Lockwood opened the door and told plaintiff to exit the cell.  Plaintiff began

21   to walk out of the pod and did not display any signs of distress or trouble walking.  Id. at 3, ¶ 5.

22   Lockwood, along with two other deputies, escorted plaintiff to medical, and when they were

23   walking, plaintiff began to sway back and forth and purposefully made himself look off balance.

24   Id., ¶ 7.  Once plaintiff arrived at medical, he fell to the floor but braced his fall.  Id., ¶ 9.  A

25   physician assistant evaluated plaintiff and concluded his evaluation with negative results.  Id.,

26   ¶ 11.  Lockwood, along with two other deputies, escorted plaintiff back to his cell and plaintiff

27

28   [2]  Plaintiff denies that he has a history of manipulating defendants.  ECF No. 91 at 4.

did not display any signs of distress and did not have an issue staying balanced while he walked.

Id., ¶ 12.  Plaintiff returned to his cell without further incident.  Id. at 4, ¶ 13.  Plaintiff filed a

grievance on August 17, 2019, regarding his encounter with Lockwood, and his grievance was

denied and closed on August 28, 2019.  Id., ¶ 14.

                        C.      August 28, 2019 Incident

On August 28, 2019, plaintiff was waiting to be searched after returning from court.  ECF

No. 80-1 at 4, ¶ 15; ECF No. 91 at 6.  Plaintiff was told by Lockwood and Clark to face the wall

and brace himself against it while lifting his foot to have his leg shackles removed.  ECF No. 80-1

at 4, ¶¶ 16-17; ECF No. 91 at 6.  Plaintiff complied with the orders and Clark removed both leg

shackles.  ECF No. 80-1 at 4, ¶ 18; ECF No. 91 at 6.  Clark then instructed plaintiff to place his

hands high on the wall when his handcuffs were removed.  ECF No. 1 at 3; ECF No. 80-1 at 4,

¶ 18.  Plaintiff responded, "I can't put my left arm high, I have nerve damage."  ECF No. 1 at 3;

ECF No. 80-1 at 4, ¶ 19.  Clark and Lockwood told plaintiff that his ability to use his arm has

been documented by correctional staff and medical staff, plaintiff responded "You are a liar."  Id.,

¶ 20.  Clark removed the handcuff from plaintiff's left wrist, and plaintiff placed his left hand at

shoulder height on the wall, but with his arm tucked down onto his side.  Id. at 5, ¶ 21.[3]  Clark

removed the handcuff from plaintiff's right wrist, and plaintiff placed his right hand high on the

wall above the height of his head.  Id., ¶ 22.  Lockwood instructed plaintiff to place his left hand

high on the wall, plaintiff said he could not.  Id., ¶ 23.  Defendants told plaintiff that they filed

reports saying plaintiff was doing pushups and arm workouts.  ECF No. 1 at 3; ECF No. 80-2 at

53 at 0:43-0:50 (video footage).[4]  Clark removed the belly chain from around plaintiff's waist,

handed them to Lockwood, and began to perform a pat down search.  ECF No. 80-1 at 4, ¶ 24.

---

[3]  Plaintiff does not admit or dispute paragraphs 21-27 of defendants' statement of facts and instead states that he defers to the video recording of the incident.  ECF No. 91 at 6.  The court therefore takes these statements as undisputed to the extent it finds they are consistent with the video recording submitted in support of defendants' motion for summary judgment.  See ECF No. 80-2 at 53.

[4]  Defendants submitted a video in support of their motion for summary judgment which is available at https://www.manningkass.com/manning/index.cfm/newsroom/video-details/?pkid=2503.  ECF No. 80-2 at 53.

As Clark began the pat down search, plaintiff moved his left hand from where he was instructed to leave it on the wall.  Id., ¶ 25.  Lockwood grabbed plaintiff's left arm, placed and held it on the wall, and told plaintiff to keep his hands where Clark had told him.  Id., ¶ 26; ECF No. 80-2 at 53 at 1:48-2:04.  Clark finished the pat down search and ordered plaintiff to place his hands behind his back before he could leave the search sally.  ECF No. 80-1 at 5, ¶ 27.  After this, defendants' and plaintiff's versions of events differ.

Plaintiff asserts that he has nerve damage on his left side and cannot hold his left arm high on the wall, and forcing it behind his back can cause dislocation.  ECF No. 1 at 3; ECF No. 91 at 6.  After plaintiff was searched, he was told to walk out with both hands behind his back.  Id.  Plaintiff told defendants that he could not do this because of a medical condition.  Id.  Clark then pushed plaintiff into a wall and began to assault him by twisting his arm with enough force to dislocate it and saying "Oh look you can put it behind your back now."   ECF No. 1 at 3; ECF No. 91 at 7.  Lockwood moved plaintiff's other arm upwards behind his back, wrenching it in an effort to dislocate and make it look like plaintiff was resisting.  ECF No. 1 at 3.  Defendants told plaintiff to stop resisting and plaintiff tried to relax and told defendants that his arm does not move that way.  Id. at 4; ECF No. 91 at 7.  Defendants then pushed plaintiff into a corner with enough force that plaintiff's head bounced off the wall.  ECF No. 1 at 4.  Lockwood placed his hand on the back of plaintiff's head and shoved his head into the wall causing plaintiff to become dizzy and see stars.  Id.  Plaintiff states that his memory of the incident is distorted and that he experienced nausea, vomiting, tiredness, and dizziness and remembers being further assaulted once they returned to his cell.  Id.  Plaintiff was later escorted to medical where he saw the physician assistant, had his shoulder relocated, and was given a new arm sling.  Id.; ECF No. 91 at 8.

Defendants in turn argue that plaintiff refused to comply with defendants' request to place his hands behind his back after the search, and instead made a fist with his left hand and placed it against his body.  ECF No. 80-1 at 6, ¶ 28.  Clark again instructed plaintiff to place his hands behind his back, but plaintiff would not comply and tried to push his way past Clark and out of the search sally.  Id., ¶ 29.  Clark attempted to stop plaintiff by placing his hands on his chest and

pushed him against the search sally wall.  Id., ¶ 30.  Clark attempted to take control of plaintiff's left arm and place it behind his back, but plaintiff tensed up and pulled away.  Id., ¶ 31. Lockwood went behind plaintiff and tried to grab his right arm to place it behind his back, but plaintiff stepped forward and tried to pull away.  Id., ¶ 32.  As Lockwood gained control of plaintiff's right arm, plaintiff dropped his weight and pulled Lockwood to the floor.  Id., ¶ 33. Lockwood landed on top of plaintiff and was able to place plaintiff's right arm in a rear wrist lock.  Id., ¶ 34.  Plaintiff yelled he was being assaulted and Lockwood responded that plaintiff was in jail and he must follow deputies' orders.  Id. at 7, ¶ 36.  Clark and Lockwood brought plaintiff to his feet and began to escort him to his cell.  Id., ¶ 39.  On the way, plaintiff tensed up and attempted to pull away from the control holds.  Id., ¶ 40.  Lockwood pushed plaintiff into the corner to retain control and Clark and Lockwood escorted plaintiff into his cell, at which point plaintiff complied with all orders and they exited the cell without incident.  Id. at 7-8, ¶¶ 41-45. The following day, plaintiff was seen by the physician assistant for complaints of shoulder damage and it was noted that an assessment of plaintiff's condition was difficult because plaintiff's "presentation of ability seems to wax and wane minute to minute."  Id. at 8, ¶¶ 47-48.

The parties do not dispute that plaintiff filed a grievance on August 28, 2019 regarding his encounter with Clark and Lockwood, his grievance was denied on September 5, 2019, and closed on September 13, 2019.  Id. at 8, ¶ 46.

### D.   September 2019 Incidents

On September 4, 2019, plaintiff had an arm sling that he was using.  ECF No. 1 at 6; ECF No. 80-1 at 8, ¶ 51.  The arm sling had previously been removed from plaintiff's possession on August 2, 2019.  ECF No. 1 at 6; ECF No. 80-1 at 8, ¶ 51.  Plaintiff's arm sling was again removed from his possession on September 4, 2019, and plaintiff filed a grievance.  ECF No. 1 at 6; ECF No. 80-1 at 8-9, ¶¶ 51-52.  After this, the parties' version of events differs.

Plaintiff argues that on August 2, 2019, he had an arm sling that was removed from his possession due to fabricated reports by Lockwood.  ECF No. 1 at 6; ECF No. 91 at 8.  On August 29, 2019, he saw a physician assistant who reissued him the sling.  Id.  On September 4, 2019, plaintiff claims that Lockwood saw plaintiff with the sling and came into his cell with Van

Gerwen and took the sling.  Id.  Plaintiff was assaulted by Van Gerwen.  Id.  Plaintiff later asked for the sling back from another officer and was denied and told there was no paperwork approving it.  ECF No. 1 at 6.  On the same day, plaintiff filed a grievance and was taken to medical to potentially get the sling back.  Id.  On September 5, 2019, plaintiff was told that he would receive a disciplinary write-up for lying to staff.  Id. at 6-7.  On September 6, 2019, when plaintiff was going back to medical, he was stopped by Van Gerwen and told to put his hand behind his back.  Id. at 7.  Plaintiff told Van Gerwen that he could not do this and that was why plaintiff was going to medical.  Id.  Van Gerwen said that he did not care and told plaintiff to put his hands behind his back or go back to his cell.  Id.  Plaintiff thought his only option was to then go back to his cell because he could not put his hand behind his back.  Id.  Plaintiff told this to Van Gerwen, who pushed plaintiff into his neighbor's door and then shoved plaintiff into his cell. Id.

Defendants assert that on September 4, 2019, medical was notified that plaintiff had an arm sling, however on August 2, 2019, the arm sling was removed as plaintiff had regained full range of motion with his left arm.  ECF No. 80-1 at 8, ¶ 51.  Plaintiff filed a grievance on September 5, 2019 stating that on September 4, 2019, his arm sling was taken by Lockwood despite it being given to him by the doctor on August 29, 2019.  Id. at 9, ¶ 52.  Additionally, on September 5, 2019, plaintiff filed a request stating that he was evaluated on August 29, 2019, and was given an arm sling, however on August 29, 2019, only an x-ray and a prescription for NSAIDs were ordered.  Id., ¶ 53.  Plaintiff had been informed of the physician assistant's decision to remove the sling both at the August 2, 2019 appointment and again when Van Gerwen and Lockwood took the sling from plaintiff on September 4, 2019.  Id., ¶ 57.

On September 6, 2019, plaintiff submitted a request to the physician assistant requesting his arm sling back.  Id. at 10, ¶ 58.  However, the physician assistant noted that plaintiff had full range of motion and been observed doing many exercises, therefore no sling or x-rays were necessary.  Id., ¶ 59.  Once the physician assistant cleared plaintiff from having to wear the arm sling, the arm sling became contraband because it was not specifically approved to be in plaintiff's possession.  Id., ¶ 61.

E.    Jail Policy

Per the Shasta County Sheriff's Office Custody Manual Policy 315, contraband is "any item possessed by inmates that is declared illegal by law or not specifically approved for inmate possession."  Id., ¶ 60.  Under Policy 308, "in most situations handcuffs should be applied with the hands behind the person's back."  Id. at 11, ¶ 63.  Shasta County Jail Inmate Orientation Manual Rules and Regulations require inmates to place their hands behind their backs when walking through the facility for staff and inmate safety.  Id., ¶ 64.  When an inmate requests medical care, deputies are responsible for summoning medical personnel or taking the inmate to medical, as the medical providers at Shasta County Jails are not employees of Shasta County.  Id., ¶ 66.

F.    Grievance Process

Any inmate of the Shasta County Jail system may grieve any condition of confinement over which the Shasta County Sheriff's Office has control.  Id. at 12, ¶ 71.  All grievances, as well as requests for medical care, are completed through tablets provided by deputies and available to inmates.  Id., ¶ 72.  To file a grievance, an inmate must complete an Inmate Request Form, mark the box "Grievance," state the grounds for the grievance, and list all the pertinent information, including times, dates, places, and names.  Id., ¶ 73.

Once an inmate submits a grievance, the completed form is answered at the first level by a Correctional Deputy who will determine the appropriate investigation and will ensure that the inmate receives a written response within one week, including the reasons if the grievance is denied.  Id., ¶ 74.  If an inmate desires to appeal the first-level decision by a Correctional Deputy, the grievance is then forwarded to a Watch Commander who will review the grievance and the response.  The Watch Commander provides a written response within one week, including the reasons for the denial if that is the case.  Id. at 12-13, ¶ 75.  If an inmate desires to appeal the second-level decision by a Watch Commander, the grievance is then forwarded to a Lieutenant or Captain at the third level.  Id. at 13, ¶ 76.  Inmates who file excessive, unfounded, or frivolous grievances may have their right to file further grievances limited to two grievances a month.  The facility Manager will evaluate and determine if an inmate is abusing the grievance system.  If the

1    inmate is abusing the grievance system, they will be notified in writing that their right to file

2    grievances will be limited.  Id., ¶ 77.

3        Plaintiff does not dispute that a grievance system exists or the description of how the

4    process is supposed to work.  ECF No. 91 at 11-12.  Instead, he states that jail staff have control

5    over use of tablets and who can access them, often deny access, have the ability to change a

6    grievance to a request, and often do not follow the grievance process.  Id.  Plaintiff claims that he

7    was often unable to move forward in the grievance process because he could not access a tablet.

8    ECF No. 91 at 12.

9        V.    Discussion

10           A.    Plaintiff's Opposition is Timely

11       Defendants argue that plaintiff's opposition was untimely and therefore should not be

12    considered under Local Rule 230(c).  ECF No. 95 at 3-4.  Plaintiff's opposition was due

13    November 27, 2023, and according to defendants, it was filed on November 30, 2023.  Id. at 3.

14    However, plaintiff was still incarcerated at the time he filed his reply and, under the prison

15    mailbox rule, a document is deemed served or filed on the date a prisoner signs the document and

16    gives it to prison officials for mailing.[5]  See Houston v. Lack, 487 U.S. 266, 276 (1988)

17    (establishing the prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010)

18    (applying the mailbox rule to both state and federal filings by incarcerated inmates).  Plaintiff's

19    opposition was accompanied by a letter to the Clerk of Court stating he placed it in the mail on

20    November 26, 2023.  ECF No. 91 at 13.  Therefore, plaintiff's opposition was timely filed.

21           B.    Plaintiff's Opposition is Admissible

22       In their reply, defendants argue that plaintiff's factual allegations are only supported by

23    plaintiff's "own self-serving testimony."  ECF No. 95 at 4.  However, not all self-serving

24    declarations are per se unable to establish a genuine issue of material fact.  "[D]eclarations are

25    often self-serving, and this is properly so because the party submitting it would use the

26    declaration to support his or her position."  Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497

27

28    ---

[5]  The court further notes that Local Rule 230(c) does not apply to briefing on motions in prisoner cases such as this, which are governed by the provisions of Local Rule 230(l).

1    (9th Cir. 2015).  If a declaration contains factual information based on personal knowledge, the

2    declaration is properly considered as evidence on a motion for summary judgement.  Thomas v.

3    Kuo, No. 1:16-cv-00524 DAD EPG P, 2019 WL 2369898, at *13, 2019 U.S. Dist. LEXIS 94500,

4    at *33-34 (E.D. Cal. June 5, 2019), adopted, 2019 WL 3003955 (E.D. Cal. July 10, 2019).  It is

5    self-serving *conclusory* statements which are insufficient to establish a genuine issue of fact.

6    Nigro, 784 F.3d at 497 ("The district court can disregard a self-serving declaration that states only

7    conclusions and not facts that would be admissible evidence.").  Additionally, "[a] plaintiff's

8    verified complaint may be considered as an affidavit in opposition to summary judgment if it is

9    based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v.

10   Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc) (citation omitted).

11         Here, plaintiff's complaint and opposition were both signed under penalty of perjury.

12   ECF No. 1 at 8; ECF No. 91 at 12.  To the extent both documents include factual information

13   based on his personal knowledge of events, they will be considered admissible by the court.

14         C.      Failure to Exhaust

15         Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are

16   subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Under the PLRA,

17   "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

18   any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

19   such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); Porter v.

20   Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners

21   seeking redress for prison circumstances or occurrences").  "[T]hat language is 'mandatory': An

22   inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent

23   exhaustion of available administrative remedies." Ross v. Blake, 578 U.S. 632, 638 (2016)

24   (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

25         Failure to exhaust is "an affirmative defense the defendant must plead and prove." Jones

26   v. Bock, 549 U.S. 199, 204, 216 (2007).  "[T]he defendant's burden is to prove that there was an

27   available administrative remedy, and that the prisoner did not exhaust that available remedy."

28   Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos,

                                              15

103 F.3d 767, 778 n.5 (9th Cir. 1996)).  "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'"  Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005).  Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand."  Albino, 747 F.3d at 1171 (citation and internal quotations marks omitted).  "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'"  Ross, 578 U.S. at 639.  "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."  Id.

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court.  Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . .").  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'" (quoting Jones, 549 U.S. at 218)).

Defendants argue that plaintiff's September 2019 claim based on excessive force against Van Gerwen, and plaintiff's claims for deliberate indifference to plaintiff's medical needs against Lockwood and Van Gerwen from August 2, 2019, August 16, 2019, and September 2019, must be dismissed because plaintiff failed to exhaust his administrative remedies.  ECF No. 80 at 16-18.[6]  In response, plaintiff argues that the administrative remedies were unavailable to him because of inability to access devices used to file grievances and because jail staff do not follow the proper grievance process.  ECF No. 91 at 2, 11-12.  Defendants admit that plaintiff exhausted his administrative remedies related to the incident on August 28, 2019.  ECF No. 80-6 at 4.

Regarding the August 16, 2019 incident, defendants state that plaintiff submitted a grievance, but that this grievance only references excessive force by Lockwood, not the denial of

---

[6]  Plaintiff also brings a claim for excessive force occurring on August 16, 2019.  ECF No. 1 at 5. Because exhaustion is an affirmative defense that defendants must plead and prove, and defendants' have not pled non-exhaustion on this claim, the court will proceed on this claim without addressing exhaustion.  Jones, 549 U.S. at 204, 216.

medical care alleged in plaintiff's complaint.  ECF No. 80 at 17.  To support their assertion that plaintiff failed to exhaust his administrative remedies, defendants submit the Inmate Orientation Manual Rules & Regulations (ECF No. 80-2 at 94-95) and the declaration of Sgt. Tanner (ECF No. 80-6).  The Inmate Manual and Tanner's declaration outline the prison grievance procedure inmates should follow to file a grievance, including adding information regarding the grounds for the grievance.  ECF No. 80-2 at 94.  Based on the grievance defendants provided, it does not appear that plaintiff included information about how Lockwood denied him medical care.  ECF No. 80-2 at 47.  However, it does say that plaintiff was threatened by Lockwood on the way to medical due to a medical emergency.  Id.  Even if the court assumes plaintiff was required to provide more information, Tanner's declaration does not specify that the grievance on August 16, 2019 was the only grievance plaintiff submitted on those issues.[7]  See ECF No. 80-6 at 3-5, ¶¶ 14-27.  Further, plaintiff has asserted that defendants did not always follow the grievance policy and that deputies control the tablets the inmates must use to file grievances.  ECF No. 91 at 12; see also ECF No. 80-2 at 49 (stating in staff response to plaintiff's grievance that "[j]ust because you ask for [a tablet] doesn't mean you are going to get it right then").

Regarding the incidents in September 2019, defendants assert that plaintiff submitted a grievance on September 5, 2019 saying only that Lockwood improperly took away plaintiff's arm sling, but that this was inadequate because plaintiff's complaint also claims that Van Gerwen used excessive force to remove plaintiff's sling.  ECF No. 80 at 17.  According to plaintiff's complaint, Lockwood and Van Gerwen came into plaintiff's cell on September 4, 2019 and forcibly removed plaintiff's sling.  ECF No. 1 at 6.  Plaintiff also alleges that on September 6, 2019 he was denied medical care by Van Gerwen when he told plaintiff that he could either put his arm behind his back or go back to his cell.  Id. at 7.  Plaintiff further states that Van Gerwen pushed plaintiff into his neighbor's door and then pulled him off and shoved him into his cell.  Id.  The grievances provided by defendants show that plaintiff filed Request #061760193 on September 5, 2019

---

[7]  How Tanner determined what grievances plaintiff filed is particularly relevant in light of plaintiff's sworn statement in his opposition that jail staff routinely convert grievances to requests after they have been submitted.  ECF No. 91 at 12.

1   alleging that Lockwood took away his sling (ECF No. 80-2 at 57), and Grievance # 0061761623

2   on September 5, 2019 which alleges that Lockwood and Van Gerwen came into his cell and took

3   his sling away (ECF No. 80-2 at 58).  Contrary to defendants' assertion, Grievance #0061761623

4   also states that Van Gerwen and Lockwood assaulted plaintiff when they removed his sling.  Id.

5   Although defendants claim that the grievance was not appealed, the grievance shows that the

6   denial was appealed twice, up to level 3, which defendants have represented is the final level of

7   appeal.  Id.  Plaintiff also filed Request # 061913033 which stated that he was refused medical

8   treatment by Van Gerwen because he could not put his arm behind his back.  Id. at 22.  Therefore,

9   defendants have not met their burden to show that plaintiff did not exhaust his administrative

10  remedies related to the September 2019 incidents.

11          Finally, defendants contend that plaintiff did not file a grievance alleging that his sling

12  was removed on August 2, 2019.  ECF No. 80 at 17.  However, the removal of his sling on this

13  date was not the subject of plaintiff's claims that he was denied medical care in September 2019.

14  Additionally, plaintiff mentioned in Request #061760193, filed on September 5, 2019, that his

15  sling was taken away on August 2 based on fabricated documentation, and also stated in

16  Grievance #061761623 that Lockwood and Van Gerwen falsified reports to have the sling taken

17  away.  ECF No. 80-2 at 57, 58.  These grievances alerted authorities to the fact that plaintiff had

18  an ongoing problem with defendants fabricating reports to have plaintiff's sling taken away, and

19  it is not clear that plaintiff needed to identify specific dates for ongoing problems.  "The primary

20  purpose of a grievance is to alert the prison to a problem and facilitate its resolution, . . . ."

21  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  The grievances plaintiff filed show that

22  plaintiff believed his sling was removed on August 2, 2019 based on falsified reports, which

23  alerted the prison to the alleged problem.  There is no indication that plaintiff's grievance was

24  rejected for not being specific enough or for raising additional issues at a higher level.  See Reyes

25  v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) ("[T]he PLRA exhaustion requirement is satisfied if

26  prison officials decide a potentially procedurally flawed grievance on the merits.").

27  ////

28  ////

For these reasons, defendants have failed to meet their burden of demonstrating that plaintiff failed to exhaust his administrative remedies and the motion should be denied on this ground.

D.    Excessive Force

"The Fourteenth Amendment, and not the Eighth Amendment, governs cruel and unusual punishment claims of pretrial detainees." Byrd v. Maricopa County Bd. of Supervisors, 845 F.3d 919, 924 n.2 (9th Cir. 2017).  "[T]he Fourteenth Amendment is more protective than the Eighth Amendment 'because the Fourteenth Amendment prohibits *all* punishment of *pretrial detainees*, while the Eighth Amendment only prevents the imposition of *cruel and unusual* punishment of *convicted prisoners*.'" Vazquez v. County of Kern, 949 F.3d 1153, 1163-64 (9th Cir. 2020) (quoting Demery v. Arpaio, 378 F.3d 1020, 1029 (9th Cir. 2004)).  Under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015).  "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case'" and must be determined "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. at 397 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id.

Excessive force cases often turn on credibility determinations, and "[the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (alteration in original) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)).  Therefore, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Id. (quoting Santos, 287 F.3d at 853).  The Ninth Circuit has "held repeatedly that the

19

1    reasonableness of force used is ordinarily a question of fact for the jury." Liston v. County of

2    Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997).

3         In his complaint, plaintiff alleges claims of excessive force against Lockwood on August

4    16, 2019, Lockwood and Clark on August 28, 2019, and Van Gerwen in September 2019.  In this

5    case, the parties' versions of events in each instance are clearly at odds.  Plaintiff explicitly

6    disputes defendants' versions of events, and it is unclear whether defendants' level of force was

7    reasonable in most instances because the reasonableness analysis depends on disputed facts.

8    Though defendants have submitted video evidence to support their position about the August 28,

9    2019 incident, as discussed below, the video evidence does not resolve the disputed facts.

10        Regarding the August 16, 2019 incident, plaintiff asserts that while walking with

11   Lockwood to medical, plaintiff was having trouble walking straight, and Lockwood "began to

12   grab [plaintiff's] shirt and shoulder with his hands" and "began to distribute his weight onto

13   [plaintiff] – causing [him] to collapse to the ground landing heavily on [his] knee with [their]

14   combined weight before hitting [plaintiff's] head on the ground," resulting in a head injury.  ECF

15   No. 1 at 5.  Although defendants request summary judgment be granted as to all claims, they do

16   not address the alleged August 16, 2019 excessive use of force in their motion for summary

17   judgment and therefore do not establish that summary judgment is appropriate on this claim.

18        Plaintiff asserts that on August 28, 2019, defendants Clark and Lockwood assaulted him

19   by forcing his arm behind his back after he told them he could not move his arm that way because

20   of a medical condition, and then further assaulted him.  ECF No. 1 at 3.  Defendants in turn

21   contend that they used objectively reasonable force because plaintiff refused to follow

22   instructions and "made a fist with his left hand, and tensed his body, and dropped his weight"

23   causing Lockwood to fall on top of him.  ECF No. 80 at 20.  Defendants have submitted video

24   footage, which shows that plaintiff was unable to raise his arm against the wall (ECF No. 80-2 at

25   53 at 1:04-25) and that he did not put his arm behind his back when instructed (id. at 2:10-24).

26   However, plaintiff alleges that this was because of an ongoing shoulder injury and that he could

27   not move his arm in the way defendants instructed.  In the video, Clark can be seen forcing

28   plaintiff's left arm behind his back and heard saying "look you just did." Id. at 2:24-28.  It is

unclear from the video whether plaintiff's actions caused Lockwood to fall on plaintiff, as defendants allege, or whether it was defendants' conduct that caused the fall to the floor.  After plaintiff is on the ground, much of his body and Lockwood's are outside the video frame and Clark is fully outside the frame.  Id. at 2:30-3:15.  While plaintiff is heard yelling, it is unclear what is physically occurring during that time.  Id.  Further, plaintiff alleges that an additional assault occurred as he was being escorted to his cell and once he was back inside his cell (ECF No. 1 at 3-4), which was not included on the video.  Plaintiff also avers that he suffered a dislocated shoulder and was in "great pain" in his elbow and wrist.  Id. at 3.

Because the disputed facts are material to deciding whether defendants use of force was excessive, and resolution of the factual disputes requires credibility determinations that are the province of a jury, summary judgment is not appropriate and defendants' motion should be denied on this ground as to the above incidents.

Regarding the incidents in September 2019, plaintiff alleges that on September 4, he was assaulted by Van Gerwen when he and Lockwood came into plaintiff's cell to retrieve plaintiff's arm sling.  ECF No. 1 at 6.  Plaintiff also claims that on September 6, Van Gerwen "became angry and pushed [plaintiff] into [his] neighbors' door.  Then he pulled [plaintiff] off the door by [his] shirt and shoved [him] into [his] own cell."  Id. at 7.  Defendants argue that there is no evidence showing that Van Gerwen used excessive force against plaintiff, but there is evidence that the arm sling was contraband.  ECF No. 80 at 21.

Plaintiff has provided no evidence or detail about how Van Gerwen assaulted him when removing the sling on September 4, either in his complaint or his opposition.  Further, plaintiff has not provided evidence that he was injured by the assault on September 4 or during the incident on September 6, or that either incident caused him pain.  Based on plaintiff's medical records, there is no indication that plaintiff was allowed to have the arm sling at the time of the incident on September 4, and per prison policy, the arm sling was therefore considered contraband.  See ECF No. 80-2 at 19, 64, 66.  This leads to the conclusion that the level of force used to remove plaintiff's sling on September 4 and during the September 6 incident was not unreasonable.  See Kingsley, 576 U.S. at 397.

1    Therefore, defendants' motion should be granted as to the alleged uses of force by Van

2    Gerwen that allegedly occurred on September 4 and September 6.

3          E.     Deliberate Indifference to a Serious Medical Need

4    "[C]laims for violations of the right to adequate medical care 'brought by pretrial

5    detainees against individual defendants under the Fourteenth Amendment' must be evaluated

6    under an objective deliberate indifference standard." Gordon v. County of Orange, 888 F.3d

7    1118, 1124-25 (9th Cir. 2018) (quoting Castro v. County of Los Angeles, 833 F.3d 1060, 1070

8    (9th Cir. 2016)).  The elements of a Fourteenth Amendment medical care claim are:

9  
10  
11  
12  
13    (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

14    Id. at 1125.

15    In his complaint, plaintiff alleges deliberate indifference to a serious medical need claims

16    against Lockwood on August 16, 2019, and against Van Gerwen during September 2019.

17    Defendants argue that plaintiff cannot show that defendants Lockwood or Van Gerwen made an

18    intentional decision about plaintiff's medical condition or that those decisions placed plaintiff at

19    risk of serious harm.  ECF No. 80 at 24.

20    On August 16, 2019, defendants contend that after plaintiff complained of chest pains,

21    Lockwood escorted plaintiff to medical where he was seen by a physician assistant.  Id. at 23-24.

22    Plaintiff's complaint confirms that Lockwood escorted him to medical, however plaintiff alleges

23    that at first Lockwood ignored plaintiff's request.  ECF No. 1 at 5.  Delays in providing medical

24    care can constitute deliberate indifference if the delay was harmful.  Estelle v. Gable, 429 U.S.

25    97, 104-05 (1976); Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002).  Prolonging

26    plaintiff's pain by delaying his treatment can constitute harm.  See Meador v. Hammer, No. 2:11-

27    cv-03342 KJM AC P, 2015 WL 1238363, at *8-9, 2015 U.S. Dist. LEXIS 32062, at *22-24 (E.D.

28    Cal. Mar. 15, 2015) (finding that delaying plaintiff's treatment for three hours was enough to

1  create a triable issue about whether defendants' inaction caused plaintiff unnecessary and wanton

2  pain); <u>Williams v. Sotelo</u>, 295 F. App'x. 208, 209 (9th Cir. 2008) (holding that prison guards'

3  delay in summoning medical assistance caused plaintiff to suffer unnecessary pain, which

4  sufficed as "constitutional injury")[8]; <u>Estelle</u>, 429 U.S. at 104.  Here, plaintiff's opposition

5  indicates that he received medical treatment about ten minutes after informing Lockwood of his

6  distress.  ECF No. 91 at 4.  The court finds that even if Lockwood did delay ten minutes, this is

7  not enough time to cause "unnecessary and wanton pain."  Plaintiff also states in his complaint

8  that the physician assistant had him "chew on" something, which "eased his symptoms."  <u>Id.</u> at 6.

9  Based on the facts alleged, Lockwood brought plaintiff to medical after a delay of about ten

10  minutes, where he was given something for his symptoms.  While plaintiff alleges Lockwood

11  initially refused to take him, there is no evidence of actual harm from the delay.

12       Therefore, even though plaintiff alleged that Lockwood delayed his medical treatment,

13  there is no indication that plaintiff suffered substantial harm.

14       With regards to the September 2019 incidents, defendants contend that the medical order

15  for plaintiff's arm sling was removed, so plaintiff was no longer allowed to have the sling.  ECF

16  No. 80 at 24.  Plaintiff first alleges that on August 29, 2019, he was reissued the arm sling, and

17  that defendants Lockwood and Van Gerwen wrongfully removed it from his possession.  ECF

18  No. 1 at 6.  Plaintiff also alleges that he was called into medical on September 6, 2019, and when

19  Van Gerwen was escorting him, he told plaintiff to put his hands behind his back and when

20  plaintiff said he could not, Van Gerwen told plaintiff that he could either do it or go back to his

21  cell.  <u>Id.</u> at 7.  Plaintiff told Van Gerwen that he would have to go back to his cell, and plaintiff

22  was unable to see medical.  <u>Id.</u>

23       In support of their motion, defendants rely on plaintiff's medical records and declarations

24  by Van Gerwen to show that plaintiff no longer needed his sling, so it was taken from him.  ECF

25

26  [8]  Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1.  Ninth Circuit Rule 36-3(b); <u>see</u>

27  <u>Animal Legal Def. Fund v. Veneman</u>, 490 F.3d 725, 733 (9th Cir. 2007) (Thomas, J., concurring in part) ("as of January 1, 2007, we must now allow parties to cite even unpublished dispositions

28  and unpublished orders as persuasive authority").

1   No. 80 at 24.  Even taking plaintiff's allegations that defendants fabricated reports to take away

2   his arm sling as true, plaintiff's medical records show that the decision to remove plaintiff's sling

3   was based on physical exams, videos of plaintiff using the arm, and observations by other medical

4   staff.  See ECF No. 80-2 at 17, 19.  Based on the medical evidence, plaintiff was not at risk of

5   injury by having his arm sling removed or by putting his hands behind his back.

6          For these reasons, there is no genuine dispute of fact as to whether defendants Lockwood

7   and Van Gerwen deliberately interfered with plaintiff's medical treatment regarding incidents on

8   August 16, 2019, and September 2019, and summary judgment is appropriate as to these claims.

9                F.      Qualified Immunity

10         "[G]overnment officials performing discretionary functions generally are shielded from

11  liability for civil damages insofar as their conduct does not violate clearly established statutory or

12  constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457

13  U.S. 800, 818 (1982) (citations omitted).  In analyzing a qualified immunity defense, the court

14  must consider the following: (1) whether the alleged facts, taken in the light most favorable to the

15  plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2)

16  whether the right at issue was clearly established at the time of the incident.  Saucier v. Katz, 533

17  U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009)

18  (overruling Saucier's requirement that the two prongs be decided sequentially).  "[S]ummary

19  judgment based on qualified immunity is improper if, under the plaintiff's version of the facts,

20  and in light of the clearly established law, a reasonable officer could not have believed his

21  conduct was lawful."  Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) (citing

22  Grossman v. City of Portland, 33 F.3d 1200, 1208 (9th Cir. 1994)).

23         With respect to plaintiff's deliberate indifference to a serious medical need claims and the

24  excessive use of force claim regarding the events in September 2019, because the facts taken in

25  the light most favorable to plaintiff do not show the violation of a constitutional right, it is not

26  necessary for the court to address defendants' argument that Lockwood and Van Gerwen are

27  entitled to qualified immunity as to those claims and the court declines to do so.

28  ////

                                          24

Regarding plaintiff's remaining claims, the court has determined that under plaintiff's version of the facts, the allegations demonstrate defendants used excessive force in violation of plaintiff's rights under the Fourteenth Amendment, and the first prong is therefore resolved in plaintiff's favor as to these claims.  With respect to whether these rights were clearly established at the time, the undersigned finds that they were.  Crediting plaintiff's version of events, defendants used force on him for no other reason than to punish and harass plaintiff.  Given the allegedly deliberate nature of defendants' conduct, no reasonable officer in their position would have believed such conduct was lawful as it was clearly established that pretrial detainees could not be punished.  See Bell v. Wolfish, 441 U.S. 520, 535, 538-39 (1979) (Due Process Clause prohibits punishment of pretrial detainees which can be shown by "expressed intent to punish" or inferred where "condition is not reasonably related to a legitimate goal").  It was also clearly established that it was unconstitutional to use force solely for the purpose of inflicting harm.  See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (force is excessive if used "maliciously and sadistically to cause harm" (citation omitted)); Or. Advoc. Ctr., 322 F.3d at 1120 (9th Cir. 2003) ("[E]ven though the pretrial detainees' rights arise under the Due Process Clause, the guarantees of the Eighth Amendment provide a minimum standard of care for determining their rights").

For these reasons, the motion for summary judgment should be denied on the grounds of qualified immunity.

VI.     Conclusion

For the reasons set forth above, defendants' motion for summary judgment (ECF No. 80) should be granted in part and denied in part, and plaintiff's motion for summary judgment (ECF No. 84) should be denied.

VII.    Plain Language Summary of this Order for a Pro Se Litigant

This court is recommending that the defendants' motion for summary judgment be granted as to the deliberate indifference to medical treatment claims against Lockwood and Van Gerwen.  This is because even if the court assumes that defendant Lockwood delayed your medical treatment and that defendants fabricated reports related to use of your arm, you have not provided any evidence that you suffered any injury as a result and your medical records indicate

25

that you did not need an arm sling.  It is also being recommended that the motion for summary

judgment be granted as to the excessive force claim against Van Gerwen related to the incidents

in September 2019 because you have not alleged that you suffered injury or pain from these

incidents.

It is being recommended that the motion be denied as to all other claims.  If the district

judge adopts this recommendation, those claims will go to trial.

The court is also recommending that your motion for summary judgment be denied

because it seeks sanctions, and the deadline for that type of motion has passed.

<u>CONCLUSION</u>

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment (ECF No. 80) be GRANTED as to the

deliberate indifference to serious medical needs claims, and the excessive force claim regarding

the incidents in September 2019, and

2.  DENIED on the remaining claims; and

3.  Plaintiff's motion for summary judgment (ECF No. 84) be DENIED.

4.  This case proceeds on the claims for excessive force against defendants Lockwood

and Clark.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

objections shall be served and filed within fourteen days after service of the objections.  The

parties are advised that failure to file objections within the specified time may waive the right to

appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 26, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE